IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JESUS GONZALEZ and
SHANNON PRILLER, on their own
behalf and on behalf of all others
similarly situated,

                Plaintiffs,

v.                                                  Civ.  No. 03-535 JH/LFG

FAMILY DOLLAR STORES, INC.,
dba FAMILY DOLLAR STORES OF
NEW MEXICO, INC.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiffs' *Motion To Permit Joinder Of Claims And For Class Certification* [Doc. No. 27].  The primary issue before the Court is whether Plaintiffs have met their burden to show that this case is appropriate for certification either as a collective action under the Fair Labor Standards Act or as a class action under Rule 23 of the Federal Rules of Civil Procedure.  The parties have submitted lengthy briefs (including a sur-reply and sur-response) and voluminous materials in support of their respective positions.  After a careful review of these written submissions, as well as the governing law, the Court concludes that the motion should be denied.

**BACKGROUND**

Plaintiffs are former employees of Defendant Family Dollar Stores, Inc. ("Family Dollar") who worked as Assistant Managers.  Family Dollar has approximately 5,000 stores in 42 states around the country, with more than 60 of those in New Mexico.  Plaintiff Jesus Gonzales worked as an Assistant Manager for Family Dollar from September, 2002 until February, 2003.  Plaintiff Shannon Priller

worked for Family Dollar as an Assistant Manager from August, 2002 through March, 2003. Both plaintiffs worked at Family Dollar stores in Albuquerque, New Mexico.

Plaintiffs claim that Family Dollar has a long-standing and nationwide practice of coercing, encouraging, and allowing its Assistant Managers to work "off-the-clock," and therefore has failed to pay the Assistant Managers wages for all of the hours they worked. Specifically, Plaintiffs contend that Family Dollar has an unwritten, nationwide policy or practice of under-budgeting for labor costs, forcing stores to employ fewer workers than they need in order to function properly. Plaintiffs argue that the company's district managers then put pressure on individual store managers and other store employees to work through breaks, lunch hours, and after hours without compensation in order to complete their required duties. Under Plaintiff's theory, employees are given the Hobson's choice of either working additional hours without pay, or failing to meet Family Dollar's standards for store maintenance and operations. Family Dollar denies Plaintiffs' claims and contends that it does not encourage "off-the-clock" work. Family Dollar asserts that it has a written policy against such practices, that off-the-clock work is the exception rather than the rule, and that it takes action to prevent and correct such practices when it discovers them.

Plaintiffs' complaint, originally filed in state district court, alleges claims for violation of state wage and hour statutes, violation of the Fair Labor Standards Act ("FLSA"), breach of contract, conversion, quantum meruit and unjust enrichment, breach of the covenant of good faith and fair dealing, and fraudulent concealment/fraudulent misrepresentation. On May 5, 2003, Defendant removed this case from the First Judicial District Court, Santa Fe County, New Mexico to this federal district court. The parties engaged in pretrial procedures, including discovery, which terminated in early 2004. On December 1, 2003, Plaintiffs filed their motion to permit joinder of claims and to

certify a class action. However, the motion was not fully briefed until June 3, 2004, when Plaintiffs filed their reply brief. On June 9, 2004, Family Dollar filed a motion for leave to file a combined surreply and additional evidence in opposition to the request for class certification. On June 24, 2004, this case was administratively transferred to the undersigned federal district judge.

On January 5, 2005, the Court held a case management conference, at which time it granted the parties' request for the opportunity to present additional briefing and evidence on the issue of whether the Court should certify collective actions under the FLSA and Rule 23 of the Federal Rules of Civil Procedure.[1] The parties filed those additional materials with the Court on January 10, 2005, and January 31, 2005, respectively, at which point briefing was completed.

In essence, Plaintiffs ask the Court to conditionally certify their FLSA claim as a "collective action" under that statute and to certify a class action under Rule 23 for their pendent state law claims. Collectively, the parties have submitted almost 200 pages of briefing and approximately 700 pages of supporting exhibits, including dozens of affidavits, hundreds of pages of deposition testimony, corporate documents, and copies of unpublished memorandum opinions.

## DISCUSSION

## I.   COLLECTIVE ACTION UNDER THE FLSA

The named plaintiffs move the Court for conditional certification of the collective action and to send court-approved notice to putative members of the collective action pursuant to 29 U.S.C. §

---

[1] At the case management conference, the parties indicated that they might need to conduct further discovery on the matters raised by Plaintiff's motion. In an order entered January 6, 2005, the Court instructed the parties to work together to resolve any issues relating to such discovery, and to alert the Court if they could not reach agreement. Having heard nothing further, the Court assumes that both parties have had a sufficient opportunity to conduct the required discovery.

216(b). The named plaintiffs seek to include all of the following persons in the collective action:

> [A]ll former and present Assistant Managers employed by Family Dollar Stores, Inc. from 1993 to the present that worked off the clock, and/or whose time cards were subsequently altered to omit hours worked, in [40 states and the District of Columbia].

Plaintiff's *Motion to Permit Joinder of Claims and for Class Certification* [Doc. No. 27] at ¶ 1. Plaintiffs estimate that the proposed class consists of over 8,000 current employees and at least 16,000 former employees.

The FLSA expressly allows employees to maintain a class action for overtime pay on their own behalf and on behalf of all others "similarly situated." 29 U.S.C. § 216(b). Section 216(b) of the FLSA provides, in pertinent part:

> Any employer who violates [the minimum wage or maximum hours provisions of this title] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

District courts have discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) of the FLSA. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court"). The power to authorize notice must, however, be exercised with discretion and

only in appropriate cases. *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983).

The Tenth Circuit Court of Appeals has approved a two-tiered, "ad hoc" approach to determine whether named and prospective plaintiffs are "similarly situated" such that certification is proper. *Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001). The standard for certifying an FLSA collective action is fairly loose initially, until discovery is completed. During this initial "notice stage," courts require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.*; *Morisky v. Pub. Serv. Elec. and Gas Co.*, 111 F. Supp. 2d 493, 497 (D.N.J. 2000). Then, the parties send notice to prospective class members and discovery proceeds. The prospective class members must affirmatively express their desire to join the litigation.[2] After the completion of discovery, the defendant may file a motion for decertification. Because at that point the record has been fully developed, the court applies a "stricter standard," analyzing factors, such as "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations ...." *Thiessen*, 267 F.3d at 1102-03 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).[3]

---

[2] This "opt in" procedure required under the FLSA is dissimilar to a standard class action under Rule 23 of the Federal Rules of Civil Procedure, where all potential plaintiffs are bound by the judgment unless they "opt out." The requirements of Rule 23 do not apply to FLSA actions and no showing of numerosity, commonality, typicality and adequacy of representation need be made. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y. 2001).

[3] Defendants argue that it is not enough for Plaintiffs to show that they are similarly situated to prospective plaintiffs. In addition, Defendants claim that this Court should follow the lead of the Eleventh Circuit and "should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Dybach v. State of Florida Dept. of Corrections*, 942 F.2d 1562, 1567- 68 (11th Cir. 1991). The Tenth Circuit has never adopted the requirement that plaintiffs demonstrate the existence of other employees who wish to opt into the

In this case, it appears that the motion comes before the Court with the parties having had the full benefit of discovery. Similar to the situation in *Brooks v. BellSouth Telecommunications, Inc.*, Plaintiffs have had extensive discovery with respect to Family Dollar's policies and practices regarding budgeting and payroll for hourly employees, including assistant managers. *See* 164 F.R.D. 561, 566 (N.D. Ala.1995). Accordingly, the Court deems it necessary to carefully consider all of the deposition testimony, documents, and other submissions of the parties with respect to the class allegations, rather than relying merely on the affidavits that support Plaintiffs' position. Therefore, the stricter standard is appropriate here. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004) (observing that at the conclusion of discovery, the court should apply the "second stage" analysis described in *Thiessen*); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 498 (D.N.J. 2000) (applying a stricter standard where discovery had been conducted). The Court will consider the evidence supplied by the parties, although it will not weigh the evidence or accept the evidence submitted by Family Dollar over that provided by Plaintiffs. *See Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265 (M.D. Ala. 2004).

In support of their motion, Plaintiffs have presented affidavits and deposition testimony from Family Dollar store managers and hourly employees (persons not included in the putative collective action) from seven states in which the deponents testify to being coerced into working overtime

---

litigation, though it has never expressly rejected it either. However, the United States District Court for the District of Colorado, also within the Tenth Circuit, has rejected this requirement, arguing that the cited language in *Dybach* is dicta, it conflicts with the Supreme Court's mandate that the FLSA should be applied liberally, and it places plaintiffs in the position of communicating with potential litigants without court supervision or guidance. *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002). The Court agrees with the analysis of *Reab*, and declines to require such a showing from the Plaintiffs in this case.

without compensation.  With the exception of Plaintiff Shannon Priller, Plaintiffs have not provided affidavits of Assistant Managers who claim to have worked overtime without compensation during the relevant time period. They have also provided excerpts from the depositions of Family Dollar corporate witnesses and employee handbooks.

Under that evidence, there appears to be no dispute that the job duties and responsibilities of assistant managers are consistent at Family Dollar stores nationwide, and that they have remained the same from 1993 to the present.  The evidence also demonstrates that Family Dollar has a formal, written policy against "off-the-clock" work that it distributes to all employees, as well as a phone number for employees to call to report improper pay practices. Family Dollar also has centralized corporate policies in place regarding employees' timekeeping, budgeting, and payroll.  However, those policies are implemented, in some measure, by district managers and store managers.  For example, although Family Dollar's national headquarters sets labor budgets for each store, it does so with input and feedback from district managers.  Factors that affect labor budgets for a particular store include, inter alia, projected sales, the number of hours the store is open, the manager's salary, the average hourly rate of employees, the crime rates in the area surrounding the store, and the number of employees required to fully staff the store.  Steven Phillips Depo. at p. 39; William McCarthy Depo. at pp. 25-37.  Store managers and district managers also have an opportunity to give feedback regarding the budgets before they are set.  Phillips Depo. at pp. 38-39; McCarthy Depo. at pp. 64-65.  Furthermore, while the procedures for employee timekeeping are set nationally, store managers and assistant managers have the power to alter or correct an employees time records. Russell Tanger Depo. at p 148; Phillips Depo. at p. 55-57; Sharon Walden Depo. at p. 12, 14, 38-39

The evidence from Family Dollar employees shows tremendous variation in their experiences

regarding "off-the-clock" work. Plaintiffs have provided affidavits from twelve employees in New Mexico and six other states. Of those employees, all worked "off-the-clock" or asked other employees to do so, most of them at the urging of their district manager or store manager, in order to complete the required work without going over the labor budget. It is not clear from these affidavits if all employees suffered the same types of pay violations; some were asked to stay late and work without compensation, others asked to work through breaks, and still others had their timesheets altered to reflect less time than they actually worked. In contrast, Family Dollar has provided affidavits from dozens of current and former employees in New Mexico and other states who have never worked overtime without pay or been asked to do so. Several of those affidavits are from store managers who testified that they have had no trouble properly operating their stores within their assigned labor budgets.

With this review of the evidence in mind, the Court now analyzes the factors set forth in *Thiessen* to determine whether the Plaintiffs and the prospective plaintiffs are similarly situated.

### A. <u>Disparate Factual and Employment Settings of the Individual Plaintiffs</u>

If the Court certifies the class as requested by Plaintiffs, it will encompass individuals who worked in thousands of stores in 41 states and various regions under hundreds or perhaps thousands of store and district managers. However, that simple fact would mean little if all of those employees were subject to the same corporate scheme or plan that resulted in FLSA violations. Such was the case in *Morgan v. Family Dollar Stores*, Civ. No. 01-C-0303-W (N.D. Ala. Nov. 7, 2002) (unpublished memorandum opinion), where the plaintiffs alleged that all store managers were subject to the same national corporate policy misclassifying them as exempt, when in fact they should have been non-exempt. In that case, certification was appropriate because regardless of the store or region

8

where they worked, the plaintiffs suffered the same harm flowing from a single policy that was applied to all store managers in a uniform manner.

However, that is not the case here. On the record presently before the Court, it appears that there is no single, central corporate policy requiring assistant managers to work "off-the-clock," but rather a situation in which some store managers and district managers expect their employees to work overtime without pay, despite having input into the budgeting process to prevent such situations. For this reason, Family Dollar's assistant managers nationwide are not similarly situated. *See, e.g., Clark v. Dollar General Corp.*, 2001 WL 878887 (M.D. Tenn. May 23, 2001) (refusing to certify national collective action of thousands of employees who worked in different stores in different states and for different managers but were not subject to a nationwide policy or practice); *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363-64 (M.D. Ala. 1999) (stating that plaintiffs failed to establish that they were similarly situated to class of employees who worked at other restaurants in the absence of evidence of company-wide management practices); *Tucker v. Labor Leasing, Inc.*, 872 F.Supp. 941, 948-49 (M.D. Fla. 1994) (finding employees were not similarly situated where decisions regarding pay were made by terminal mangers and department heads, not on a corporate-wide basis); *Ray v. Motel 6 Operating, Ltd. Partnership*, 1996 WL 938231 (D.Minn. 1996) (refusing to certify a collective action because "the illegal overtime plan alleged by Plaintiffs in the present action is not necessarily carried out through central management. First, official written policy dictates that overtime will be paid in compliance with the FLSA. Second, if an illegal scheme exists at all, it is implemented on a decentralized level. Specifically, the approval of overtime is controlled by area supervisors").

9

**B.     Various Defenses Available to Defendant Which Appear to Be Individual to Each Plaintiff**

The defenses available to Family Dollar will be based on whether or not a particular plaintiff worked unpaid overtime, and if so, how much. This will necessarily vary based upon the circumstances of the individual plaintiff, including how long that person worked for Family Dollar and what his rate or rates of pay were during the relevant time period, and the application of fact-specific legal defenses such as the statute of limitations. Even more fundamentally, the question of whether a particular employee worked "off-the-clock" will depend in great measure on the identities of his store manager(s) and district manager(s), because the evidence before the Court suggests that it is they, not a centralized decisionmaker, who exercise the discretion to determine whether employees work overtime without compensation, even if it means exceeding their labor budgets.

**C.     Fairness and Procedural Considerations**

As explained above, Plaintiffs have estimated that the proposed class would encompass approximately 24,000 current and former employees of Family Dollar. A class of this size raises significant problems for an accurate, fair and thorough adjudication. Plaintiffs argue that these problems can be minimized through the use of "representative proof." However, Plaintiffs have failed to elaborate on the specifics of how they would implement this method of proof. Further, the individualized questions inherent in a class of this size working under decentralized managers raises significant doubts about the efficacy of representative proof. In short, the likelihood that Family Dollar's individualized defenses and the specific circumstances of employment for each of the thousands of plaintiffs will not only detract from any asserted commonality of the questions as viewed from the standpoint of the class members but, in point of fact, destroy any possible commonality.

*See, e.g., Ray v. Motel 6 Operating, Ltd. Partnership*, 1996 WL 938231 (D. Minn. 1996) ("[I]t is not enough that all the plaintiffs share the same employer and that they allege a common scheme. Rather, the court must also look to specific factual similarities or differences and manageability concerns."). For example, in one case the Court reasoned that the presence of 1,300 plaintiffs presented significant manageability problems to the extent that the case was unsuitable for class treatment. *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 467 (D.N.J. 1988) ("Manageability of a jury trial in which there would be more than 1300 separate trials would not be possible.").

On balance, the Court finds that the benefits of a collective action under Section 216(b) are far outweighed by the individual issues that will predominate, the prejudice to Family Dollar, and procedural difficulties that may arise. Plaintiffs motion for conditional certification will be denied.

## II.    CLASS ACTION UNDER RULE 23

Plaintiffs also request that the Court certify a Rule 23 class action encompassing employees in 42 states in order to adjudicate their six state law claims: violation of various state wage and hour statutes, breach of contract, conversion, quantum meruit and unjust enrichment, breach of the covenant of good faith and fair dealing, and fraudulent concealment/fraudulent misrepresentation.

When a person sues or is sued as a representative of a class, the court must—at an early practicable time—determine by order whether to certify the action as a class action. FED. R. CIV. P. 23(c)(1)(A). There are four prerequisites that a class of plaintiffs must meet before a suit may be certified as a class action. Fed. R. Civ. P. 23(a). A party seeking to certify a class is required to show, under a strict burden of proof, that all four requirements of Rule 23(a) have been met. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). First, the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Plaintiffs have alleged that the putative class

would contain approximately 24,000 members, and Defendant does not appear to oppose certification on grounds that the numerosity requirement has not been satisfied. Second, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Third, the claims or defenses of the representative parties must be typical of the claims or defenses of the class. FED. R. CIV. P. 23(a)(3). Fourth, the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

In addition to the threshold requirements of Rule 23(a), parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3). Where monetary damages are the predominant remedy sought, as is the case here, certification is usually only appropriate pursuant to Fed. R. Civ. P. 23(b)(3). Before a class can be certified pursuant to that provision, the Court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Rule 23(b)(3) predominance requirement, which is demanding, incorporates the Rule 23(a) commonality requirement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231 (1997); *see also In re LifeUSA Holding, Inc.*, 242 F.3d 136, 144 (3d Cir. 2001). Accordingly, the Court analyzes the two factors together, with particular focus on the predominance requirement.

In determining whether class or individual issues predominate in a putative class action suit, the Court must take into account "the claims, defenses, relevant facts, and applicable substantive law," *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996), in order to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant. Where, after adjudication of the classwide issues, plaintiffs must still introduce

a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3). *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003) (declining class certification in part because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief").

Under this framework, the Court finds that this case is not suitable for adjudication as a class action. First, common questions of law do not predominate over any such questions affecting only individual members of the putative class. In essence, Plaintiffs are asking this Court to apply the varied common and statutory laws of 41 different states. Although there may be some common elements among the various causes of action, those will be outweighed by the individualized and particularized legal determinations that this Court will have to make with regard to each legal claim in each state. Variations in an array of areas, including elements of the claims, statutes of limitations, and the availability of damages, will far outweigh any such common elements. Though it is their burden to prove predominance, Plaintiffs gloss over this requirement. They have not provided the Court with a detailed, systematic analysis of the various applicable state laws at issue, instead merely stating that the Court could deal with the issues by forming sub-classes. Plaintiffs simply have not offered any coherent explanation of what those subclasses might be or how they might simplify the matter. The Court agrees with the Defendant that the application of so many different legal theories under the laws of different states would be impracticable and unmanageable. *See, e.g., Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law analysis to each plaintiff's claims...the proliferation of disparate factual

13

and legal issues is compounded exponentially") *aff'd.*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir.1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be [the] appropriate course of action"); *In re Bridgestone/Firestone, Inc.* 288 F.3d 1012, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable.").

In addition, it appears that common questions of fact will not predominate. Instead, plaintiffs will have to introduce a great deal of individualized proof in order to prevail on their claims. This stems from two different factors. Variations in the applicable state laws will inherently require plaintiffs to present individualized proof in order for them to satisfy the required elements of those laws. This, in turn, suggests that whether any particular plaintiff will be entitled to recover will depend a great deal upon a number of individualized factors, including the employee's location and the identity of his or her supervisor.

It is also important to note that Rule 23(b)(3) lists the "desirability or undesirability of concentrating the litigation of the claims in the particular forum" as another factor to consider in determining whether the class action is a superior method for the fair and efficient adjudication of the controversy. This factor also weighs heavily against certification of a class action. Plaintiff has not shown that Defendant has any particular connection to New Mexico; Plaintiffs do not allege that Family Dollar is incorporated in New Mexico or that its primary place of business is here. Plaintiffs do not contend that a greater number of witnesses or putative plaintiffs reside in New Mexico. Furthermore, it is undisputed that fewer than 1% of Family Dollar's stores nationwide are located in

New Mexico. In short, New Mexico is an undesirable location in which to concentrate the state law claims of thousands of putative plaintiffs from across the nation. Accordingly, the Plaintiffs' request to certify a national class action will be denied.

IT IS THEREFORE ORDERED THAT Plaintiffs' *Motion To Permit Joinder Of Claims And For Class Certification* [Doc. No. 27] is DENIED.

_____
UNITED STATES DISTRICT JUDGE